James H. SMITH, Appellee,

v.

UNITED STATES GYPSUM COMPANY, a Delaware Corporation, and Chicago Mastic Company, an Illinois Corporation, Appellants.

No. 51439.

Supreme Court of Oklahoma.

Feb. 26, 1980.

Rehearing Denied June 23, 1980.

Warren Gotcher, Gotcher & Gotcher, McAlester, for appellee.

Best, Sharp, Thomas & Glass by Joseph A. Sharp, Jack M. Thomas, William F. Smith, Tulsa, for United States Gypsum Co.

Rogers, Rogers & Jones, by Dan A. Rogers, W. Michael Hill, Tulsa, for Chicago Mastic Co., appellants.

DOOLIN, Justice:

This is an appeal from a plaintiff's verdict in a manufacturers' products liability action. Defendants, appellants herein, are the manufacturers and distributors of Wal-lite, a solvent based adhesive used to install paneling.

Plaintiff and his wife, intending to panel their bathroom, purchased two gallon cans of Wal-lite. The paneling was to be placed over the bathroom window, consequently it was closed and sealed. The directions on the can were as follows:

"DANGER
EXTREMELY FLAMMABLE
VAPORS MAY CAUSE FLASH FIRE
VAPORS HARMFUL
See cautions on back panel"

Back label carried following admonitions:
"CONTAINS HEXANE. Vapors may ignite explosively. Prevent buildup of vapors—open windows and doors—use only with cross ventilation. Do not smoke, extinguish all flames and pilot lights; turn off stoves, heaters, electric motors, and other sources of ignition dur-

ing use and until all vapors are gone. Do not take internally. Avoid prolonged contact with skin and breathing of vapor. Keep away from heat, sparks, and open flame. Close container after each use."

Pursuant to his reading of the instructions, plaintiff turned off the hot water heater and the pilot light on his kitchen stove and opened the front and back doors. He then opened the can and started the application. Several minutes later his wife turned on a fan across the hall from the bathroom. As she reentered the bathroom she testified she saw a blue flame erupt under plaintiff's trowel and the explosion occurred. Plaintiff was seriously injured.

Plaintiff filed the present suit based on manufacturers' products liability. Plaintiff claimed Wall-lite as sold in gallon cans was defective when it left the manufacturer's hands in such a way as to make it unreasonably dangerous to the ordinary consumer. He alleged warnings on the can were inadequate in that even if they were followed, the product was still unreasonably dangerous. The claimed defect was the rapid release of highly inflammable hexane vapors. Plaintiff sought actual damages and also punitive damages contending defendants' marketing the product with full knowledge of its dangers was wanton and reckless conduct.

Trial was held to a jury who returned a verdict of actual damages in the amount of $600,000.00. It did not award punitive damages. Defendants did not file a motion for new trial but timely perfected this appeal.

Defendants claim the trial court erred in overruling their demurrers to the evidence and motions for directed verdict, arguing there was insufficient evidence to submit the case to the jury.

█ In *Kirkland v. General Motors Corporation*, 521 P.2d 1353, 1363 (Okl.1974) this court set out the elements of a cause of action in manufacturers' products liability.

"*First* of all Plaintiff must prove that the product was the cause of the injury; the mere possibility that it might have caused the injury is not enough.

*Secondly*, Plaintiff must prove that the defect existed in the product, if the action is against the manufacturer, at the time the product left the manufacturer's possession and control. (Citation omitted). If the action is against the retailer or supplier of the article, then the Plaintiff must prove that the article was defective at the time of sale for public use or consumption or at the time it left the retailer's possession and control.

*Thirdly*, Plaintiff must prove that the defect made the article unreasonably dangerous to him or to his property as the term 'unreasonably dangerous' is above defined."

Unreasonably dangerous is defined as "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics".[1] Defendants claim proof of the third element of the cause of action was missing.

There is no question the Wal-lite exploded, probably due to ignition of the vapors by the electric fan. But was the proximate cause an unreasonably dangerous product due to defective design and inadequate warnings, or was it plaintiff's ignoring the warnings on the can?

█ If a product is potentially dangerous to consumers, a manufacturer is required to give directions or warnings on the container as to its use.[2] If these warnings cover all foreseeable use and if the product is not unreasonably dangerous if the warnings and directions are followed, the product is not defective in this respect. If warnings are unclear or inadequate to apprise the consumer of the inherent or latent danger, the product may be defective; par-

---

**1.** *Kirkland v. General Motors Corporation*, 521 P.2d 1353 (Okl.1974), Syllabus 4 by the court.

**2.** Restatement of Torts (Second) § 402A (1965) comments j, k; *Cunningham v. Charles Pfizer & Co., Inc.*, 532 P.2d 1377, 1381 (Okl.1975).

ticularly where a manufacturer has reason to anticipate danger may result from the use of his product and the product fails to contain adequate warning of such danger, the product is sold in a defective condition.[3]

■ Foreseeability as applied to manufacturer's products liability is a narrow issue. A manufacturer must anticipate all foreseeable uses of his product. In order to escape being *unreasonably* dangerous, a *potentially* dangerous product must contain or reflect warnings covering all foreseeable uses. These warnings must be readily understandable and make the product safe. Foreseeability as used here is not to be confused with foreseeability involved in the concept of proximate cause under a negligence theory; see *Cooley v. Quick-Supply Company*, 221 N.W.2d 763 (Iowa 1974).

A recent decision, *Parks v. Allis Chalmers Corporation*, 398 N.W.2d 456 (Minn.1979), held that even though the manufacturer of a harvester placed warnings against manual unclogging on its machine, it could be held liable to an injured farmer for failing to make the warnings more explicit or to incorporate an economically feasible safety interlock system. The Minnesota Supreme Court stated there was sufficient evidence for jury to conclude the manufacturer knew, or should have known "that some users would leave the power connected while unclogging . . ."

Similarly, defendants in the present case should have known that some users would install paneling in a room without a window. If the jury found Wal-lite was designed in such a way that the vapors ignited easily, and that warnings and directions did not adequately warn of the dangerous conditions created, it was justified in finding a defect in the product.

If jury found this defect made the product unreasonably dangerous to the consumer, *Kirkland*'s third element is satisfied.

■ Expert testimony at trial indicated the hexane vapors contained in the adhesive were released at a rapid rate if applied as directed on the can. The label instructed the consumer to apply the adhesive with a saw-tooth trowel. The expert opined such use compounded the dangers as this type of application doubled the evaporative rate by making grooves in the mixture. He concluded the release of the vapors into an enclosed space was too rapid to be overcome or guarded against. Plaintiff and his wife both testified the instructions and warnings were read and followed to the best of their ability. They attempted to satisfy the "cross ventilation" instruction by opening the doors and using the fan.

Defendants claim the evidence shows plaintiff deliberately disregarded the instructions and warnings on the can, resting their case on the fact the bathroom contained no open window. This, they submit, caused the accident, not any defect in the Wal-lite. There is no evidence of such deliberate disregard of the instructions. To the contrary, testimony indicates every attempt was made to heed the warning.

We hold there was sufficient evidence the warnings on the Wal-lite did not prevent the product from being unreasonably dangerous. Proof of the third element was sufficient to send the case to the jury.

■ Defendants ask us to hold as a matter of law that plaintiff misused the product and voluntarily assumed the risk of a known defect, defenses to a manufacturers' products liability action under *Kirkland v. General Motors, supra*. Use of Wal-lite as an adhesive, its sole purpose, cannot be misuse of the product even if plaintiff used

---

**3.** Restatement of Torts (Second) § 402A (1965) comment h; *Berkebile v. Brantley Helicopter Corporation*, 462 Pa. 83, 337 A.2d 893 (1975); Cf. *Little v. PPG Industries, Inc.*, 92 Wash.2d 118, 594 P.2d 911 (1979).

Although breach of a "duty to warn" on part of manufacturer is an element of a negligence

action, it is not applicable in strict liability. The focus here is on the condition or defect existing *in the product itself* which may be defective because *product* does not contain proper instructions or warning. See *Ezagui v. Dow Chemical Corporation*, 598 F.2d 727 (2nd

it carelessly as alleged.[4] Evidence does not support defense that plaintiff knew the warnings were inadequate or that its application with a trowel would make the product more dangerous. The existence of the defenses is a jury question. Trial court properly overruled defendants' demurrers to the evidence and motions for directed verdict.[5]

Defendants next suggest the issue of punitive damages should not have been submitted to the jury. They object to admission of reports of the financial worth of defendant United States Gypsum Company in support of an award for punitive damages, claiming this was prejudicial error.

 Plaintiff sought punitive damages in his petition. If punitive damages are an issue, evidence of worth of the defendants may be considered.[6] In no appellate proposition do defendants claim the verdict was excessive due to bias on the part of the jury because its members knew one defendant had a "deep pocket." The jury did not award punitive damages. No prejudicial error was shown.

 Defendants objected to the testimony of one of plaintiff's expert witnesses, a chemical engineer, that warnings appeared to him "to be inadequate," arguing this is testimony as to the ultimate fact. Also they objected to testimony of a psychiatrist warnings would be vague to a person such as plaintiff.

We feel this is well within permissible testimony of expert witnesses and is not reversible error.[7] Defendants had ample opportunity for cross-examination.

Defendants objected to two other instructions.

Instruction No. 8 provided:

"The plaintiff, James H. Smith, contends that the defect that is referred to in the previous instructions is what is called a design defect. A design defect includes the product itself or the information, the size or quantity of which it was supplied, and the instructions, warnings, and directions for its use. A design defect means that the product may be used for the purpose for which it was intended, but that through some characteristic thereof, latent and not readily apparent to the eye, may cause injury or harm to the user of the product. The plaintiff further contends that the warnings are inadequate. A warning must adequately inform the ordinary user of the precautions, if any, he must take and risk, if any, that he is exposed to in the use of the product. The warning must reasonably communicate the extent or seriousness of the harm that could result from the danger. The instructions may also be defective if the product, when used in accordance with the instructions create an unreasonable dangerous condition.

Where warning is given, the manufacturer and distributor may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous."

Instruction No. 9 provided:

"The defendants contend that plaintiff, James H. Smith, misused the Wal-lite product.

A misuse or abnormal use of a product is a use for some purpose other than that for which the product is intended.

To prove misuse or abnormal use as a defense in the present case, the defendants must prove by a preponderance of the evidence that:

A. The purpose for which the plaintiff was using the product was improper; and

Cir. 1979); *Cooley v. Quick-Supply Company,* supra.

**4.** *Fields v. Volkswagen of America, Inc.,* 555 P.2d 48, 56; 84 A.L.R.3d 1199 (Okl.1976).

**5.** *Jackson v. Cushing Coca-Cola Bottling Company,* 445 P.2d 797 (Okl.1968).

**6.** *Basden v. Mills,* 472 P.2d 889 (Okl.1970). We leave for another day, the question of whether punitive damages may be recovered in an action for manufacturers' products liability.

**7.** *State of Oklahoma v. Kerr-McGee Corporation,* —— P.2d —— (Okl.1979).

B. The defendants could not reasonably foresee that the product would be used for such an improper purpose.

If the use of the product is one that defendant could reasonably foresee, it is not a misuse of the product.

It is not a misuse of the product to use the product for a proper purpose, but in a careless manner.

Thus, if plaintiff was using the Wal-lite product for a proper purpose, but in a careless manner, this is not a misuse and this is not a defense unless such action caused the accident.

Further, if the plaintiff was using the Wal-lite product for a proper purpose but was negligent in a manner which was reasonably foreseeable by the defendants, this is not a misuse and this is not a defense.

Finally, if the plaintiff did something which contributed to the alleged explosion and fire, but was reasonable foreseeable by the defendants this is not a misuse and this is not a defense, subject to prior instructions on adequacy of warnings and causation. It is not a defense that negligence on the part of some other person contributed to the alleged explosion and fire in the present case."

■ Defendants claim there was no evidence introduced at trial on which to base either of these instructions. Evidence, lay and expert, of the existence of warnings and their adequacy is found in the record as is evidence of use and purpose of the product. Under these circumstances the instructions adequately define the perimeters of a cause of action in manufacturers' products liability based on defective design and inadequacy of warnings, and defenses based on misuse. A judgment will not be disturbed on appeal by allegedly erroneous instructions where as a whole they fairly present the law applicable to the issues raised by pleadings and the evidence.[8]

AFFIRMED.

8. *Kirkland v. General Motors*, supra, n. 1; *Bentley v. Hardin*, 577 P.2d 471 (Okl.1978).

LAVENDER, C. J., and WILLIAMS, HODGES, SIMMS and HARGRAVE, JJ., concur.

BARNES and OPALA, JJ., concur in result.

IRWIN, V. C. J., dissents.