Richard and Chery ATTOCKNIE, as guardians of Carla Attocknie; and Richard and Chery Attocknie, individually, Appellants,

v.

CARPENTER MANUFACTURING, INC., an Indiana corporation; Carpenter Body Works, Inc., and Beuford Keas Bus Sales, Inc., an Oklahoma corporation, Appellees.

No. 84707.

Court of Appeals of Oklahoma, Division No. 1.

March 28, 1995.

As Corrected March 30, 1995.

Rehearings Denied May 9, 1995.

Certiorari Denied July 20, 1995.

James D. Sill, Shawnee, R. Thomas Beadles, Oklahoma City, for appellants.

Kenneth A. Brokaw, A.T. Elder, Jr., Oklahoma City, for appellee Carpenter Mfg., Inc., and Carpenter Body Works, Inc.

Harry R. Palmer, Jr., Oklahoma City, for appellees Beuford Keas Bus Sales, Inc.

## MEMORANDUM OPINION

HANSEN, Presiding Judge:

Appellants, Richard and Chery Attocknie, as Guardians of Carla Attocknie, and Richard and Chery Attocknie, individually, seek review of the trial court's order which denied their motion for new trial, reconsideration and re-examination. Appellants sought reconsideration by the trial court of its order which sustained in part, the summary judgment motions of Appellees, Carpenter Manufacturing, Inc., Carpenter Body Works, Inc., and Beuford Keas Bus Sales, Inc., (collectively Carpenter). This appeal is submitted for our review under Rule 1.203, Rules of Appellate Procedure, 12 O.S., Ch. 15, App. 2.[1] Appellants brought this action to recover damages for injuries received by Carla Attocknie while she was a passenger in a school bus which was involved in an accident with a truck in 1991. Appellants brought this action in negligence, manufacturer's products liability and for failure to warn on the ground that the school bus did not have seat belts. The trial court sustained Carpenter's motion for summary judgment on the basis the ac-

---

1. Appellants' motion to remove this appeal from the accelerated procedures of Rule 1.203 for the purpose of submitting appellate briefs is denied.

tion was preempted by federal law[2] and on the ground that the school bus on which Carla Attocknie rode, was not dangerously defective as a matter of law. The trial court overruled Carpenter's motion for summary judgment with regard to its assertion of the "government contractor defense" and the "contract specification defense". We hold that the trial court erred in determining the action was preempted by federal law. It also erred in finding the bus was not dangerously defective as a matter of law. Disputed material facts regarding whether the bus without seat belts was defective and unreasonably dangerous.

■ Summary judgment is an appropriate procedural device to use to reach final judgment where there is no dispute as to any material facts. *Hargrave v. Canadian Valley Electric Cooperative,* 792 P.2d 50, 55 (Okla.1990). A court may consider evidentiary material to determine whether any issues remain for jury determination. *Indiana National Bank v. State Department of Human Services,* 857 P.2d 53, 60 (Okla.1993). All material facts set forth in the statement of the movant which are supported by admissible evidence shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the adverse party and supported by admissible evidence. Rule 13(b), Rules for District Courts, 12 O.S., Ch. 2, App. 1. The court shall render judgment if there is no substantial controversy as to any material fact and if one of the parties is entitled to judgment as a matter of law. Rule 13(e).

The uncontroverted facts show in August, 1990, the Carnegie School District purchased from a distributor, Appellee Beuford Keas Bus Sales, Inc., a school bus which was manufactured by Appellees Carpenter Manufacturing, Inc. and Carpenter Body Works, Inc. The school bus as manufactured by Carpenter did not have seat belts for bus passengers. The gross vehicle weight rating, the "G.V.W.R." of the bus, was *more* than 10,000 pounds. According to Carpenter and uncontroverted by Appellants, Federal Safety

Standard 222, 49 C.F.R. 571.222, which sets federal standards for school bus passenger seating and crash protection, does not require school buses with a G.V.W.R. of more than 10,000 pounds to have seat belts for passengers. The school bus seating system in the bus complied with the Oklahoma Minimum Specifications for School Buses, which are promulgated by the Oklahoma State Department of Education, with regard to seating, seat belts and crash barriers. The Oklahoma Minimum Specifications require a "Type 2 lap belt/shoulder harness seat belt" for the *driver* only. The Oklahoma Minimum Specifications do not require seat belts for passengers in these types of buses.

Carpenter moved for summary judgment on the basis Appellants' action was preempted by federal law and regulations. Specifically, Carpenter maintains the National Traffic and Motor Vehicle Safety Act of 1966 (the Safety Act), Pub.L. No. 89–563, 80 Stat. 718 (1966) (codified at 15 U.S.C. §§ 1381–1431; recodified to 49 U.S.C. § 30103(b) & (e) effective July 15, 1994), and the federal regulations including 49 C.F.R. § 571.222 ("Standard 222"), pre-empt this common law tort action.

The purpose of the Safety Act is to reduce traffic accidents and deaths and injuries to persons resulting from traffic accidents. 15 U.S.C. § 1381. To further this purpose, Congress determined it necessary to establish motor vehicle safety standards for motor vehicles and equipment in interstate commerce. 15 U.S.C. § 1381. Pursuant to the Safety Act, the National Highway Traffic Safety Administration established standards, including the standards for school bus passenger seating and crash protection set forth in Standard 222. The purpose of Standard 222 is "to reduce the number of deaths and the severity of injuries that result from the impact of school bus occupants against structures within the vehicle during crashes and sudden driving maneuvers".

The Safety Act contains a preemption clause. 15 U.S.C. § 1392 provides in part:

---

**2.** The trial court did not specify whether it found the action impliedly or expressly preempted by federal law.

(a) Establishment. The Secretary shall establish by order appropriate Federal motor vehicle safety standards. Each such Federal motor vehicle safety standard shall be practicable, shall meet the need for motor vehicle safety, and shall be stated in objective terms.

\* \* \* \* \* \*

(d) Supremacy of Federal standards; allowable higher standards for vehicles used by Federal or state governments. *Whenever a Federal motor vehicle safety standard established under this title is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any motor vehicle or item of motor vehicle equipment any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.* Nothing in this section shall be construed as preventing any State from enforcing any safety standard which is identical to a Federal safety standard. Nothing in this section shall be construed to prevent the Federal Government or the government of any State or political subdivision thereof from establishing a safety requirement applicable to motor vehicles or motor vehicle equipment procured for its own use if such requirement imposes a higher standard of performance than that required to comply with the otherwise applicable Federal standard.

\* \* \* \* \* \*

The Safety Act also includes a "savings clause" in 15 U.S.C. § 1397(k):

(k) Continuation of common law liability. Compliance with any Federal motor vehicle safety standard issued under this title does not exempt any person from any liability under common law.

---

**3.** Thus, a successful common-law tort action could have the effect of establishing a safety standard applicable to the same aspect of performance of a motor vehicle or item of motor vehicle equipment as that addressed by a federal standard.

■■■■ The doctrine of preemption arises from the Supremacy Clause of the United States Constitution, U.S. Const. Art. VI, cl. 2, and invalidates any state law that contradicts or interferes with an Act of Congress. *Wilson v. Harlow,* 860 P.2d 793, 798–799 (Okla. 1993); *Sargent v. Central National Bank & Trust Company of Enid, Oklahoma,* 809 P.2d 1298, 1301 (Okla.1991). It is well recognized that "state law" as used in preemption analysis, includes not only the positive enactments of a state but also common law rules of liability as determined by state judicial decisions. *Cleveland v. Piper Aircraft Corporation,* 985 F.2d 1438, 1441 (10th Cir.1993).[3] Generally, preemption occurs in four instances:

(1) when express statutory language so provides;

(2) by a pervasive regulatory scheme that infers by its presence that Congress felt the federal regulation did not need supplemental state law provisions;

(3) when there exists an actual conflict between state and federal laws making it physically impossible to comply with both; or

(4) where the objectives and purpose of Congress are thwarted by state law.

*Todd v. Frank's Tong Service, Inc.,* 784 P.2d 47, 49 (Okla.1989). A presumption of preemption arises only where there is a "conspicuous federal intent to exclude the questioned state law". *Todd,* at 49.

The Supreme Court of the United States has recently addressed the doctrine of preemption in the case of *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). In *Cipollone,* the Supreme Court determined that the Federal Cigarette Labeling and Advertising Act before being amended in 1969, did not preempt state law damages actions but that the amended Act preempted certain common-law claims and not others.[4] In discussing the

---

**4.** The 1965 Cigarette Act only pre-empted state and federal rulemaking bodies from mandating particular cautionary statements on labels and did not pre-empt state law damages actions. The 1969 version of the preemption provision broadened its preemptive reach to some common law claims. The Cigarette Act did not have a "savings clause" as does the Safety Act.

doctrine of preemption, the Court stated any consideration of issues arising under the Supremacy Clause must start with the assumption that the historic police powers of the States are not to be superseded by a Federal act unless that is the clear and manifest purpose of Congress. *Cipollone*, 505 U.S. at ——, 112 S.Ct. at 2617. Therefore, Congress' purpose is the "ultimate touchstone" of preemption analysis. *Cipollone*, at ——, 112 S.Ct. at 2617.

█ "In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if federal law so thoroughly occupies a legislative field 'as to make reasonable the inference that Congress left no room for the States to supplement it.'" *Cipollone*, at ——, 112 S.Ct. at 2617, quoting *Fidelity Federal Savings & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982). However, where Congress has considered the issue of pre-emption and has included in the federal legislation a provision explicitly addressing that issue and when the provision provides a "reliable indicium of congressional intent with respect to state authority", there is no need to *infer* a congressional intent to preempt state laws from the substantive provisions of the federal legislation. *Cipollone*, 505 U.S. at ——, 112 S.Ct. at 2618. Thus, where a federal act expressly provides for preemption in its provisions, there is no room to "imply" preemption. This holding is based on the principle of Expression Unius est Exclusion Alterius: that Congress' enactment of a provision which defines the pre-emptive reach of a statute implies that matters beyond that reach are not pre-empted. *Cipollone*, at ——, 112 S.Ct. at 2618.

Prior to *Cipollone*, there existed a division of authority on whether the provisions of the Safety Act either expressly or impliedly pre-empted state common-law claims, including claims based on defective design.[5] In the 10th Circuit Court of Appeals, the Court used an *implied* preemption analysis to conclude the Safety Act preempted the plaintiffs' air bag claim. *Kitts v. General Motors Corporation*, 875 F.2d 787 (10th Cir.1989). In *Kitts*, the plaintiffs sued an automobile manufacturer under New Mexico tort law alleging that the automobile was negligently manufactured and defectively designed because it did not have a passive restraint system (air bags in addition to or instead of safety belts). The defendants in *Kitts* had manufactured the automobiles in compliance with the federal standards. The federal standards made it *optional* to install air bags to be in compliance with federal standards. The 10th Circuit relied on *Wood v. General Motors Corp.*, 865 F.2d 395 (1st Cir.1988), and held the state actions were *impliedly* preempted by the Safety Act. *Cipollone*, however, provides that courts should not undertake an implied pre-emption analysis if the federal statute has expressly provided the preemptive reach of the federal law. The 10th Circuit again addressed the preemption doctrine post-*Cipollone* in *Cleveland v. Piper Aircraft Corporation*, 985 F.2d 1438 (10th Cir.1993) (cert. denied), holding the Federal Aviation Act did

---

5. Prior to *Cipollone*, jurisdictions which have found state tort claims to be *expressly* pre-empted by the safety Act include: *Wattelet v. Toyota Motor Corporation*, 676 F.Supp. 1039 (D.Mont. 1987); *Cox v. Baltimore County*, 646 F.Supp. 761 (D.Md.1986); *Vanover v. Ford Motor Co.*, 632 F.Supp. 1095 (E.D.Mo.1986); *Wickstrom v. Maplewood Toyota, Inc.*, 416 N.W.2d 838 (Minn. App.1987). Some jurisdictions, prior to *Cipollone*, found state tort claims for defective design to be *impliedly* pre-empted under the Safety Act: *Wood v. General Motors Corporation*, 865 F.2d 395 (1st Cir.1988); and in reliance on *Wood*, *Kitts v. General Motors Corporation*, 875 F.2d 787 (10th Cir.1989); *Taylor v. General Motors Corporation*, 875 F.2d 816 (11th Cir.1989). Since the Supreme Court's decision in *Cipollone*, many Circuit Courts have had occasion to discuss the changes in pre-emption analysis mandated by *Cipollone*. See *Myrick v. Freuhauf Corporation*, 13 F.3d 1516 (11th Cir.1994) (cert. granted); *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438 (10th Cir.1993) (cert. denied); *Greenwood Trust Company v. Commonwealth of Massachusetts*, 971 F.2d 818 (1st Cir.1992) (cert. denied); *Toy Manufacturers of America, Inc. v. Blumenthal*, 986 F.2d 615 (2nd Cir.1992); *Worm v. American Cyanamid Company*, 5 F.3d 744 (4th Cir.1993); *Stamps v. Collagen Corporation*, 984 F.2d 1416 (5th Cir.1993) (cert. denied); *American Agriculture Movement, Incorporated v. Board of Trade of City of Chicago*, 977 F.2d 1147 (7th Cir.1992); *Kinley Corporation v. Iowa Utilities Board*, 999 F.2d 354 (8th Cir.1993).

not expressly or impliedly preempt the state law tort claims there in issue.[6]

In *Myrick v. Freuhauf Corporation*, 13 F.3d 1516 (11th Cir.1994) (cert. granted — U.S. ——, 115 S.Ct. 306, 130 L.Ed.2d 218 (1994)), the plaintiffs brought two state tort actions against the manufacturers of trucks that were not equipped with antilock brakes (claims of negligent design and dangerously defective products). The trial court granted summary judgment on the grounds the actions were preempted by the federal Safety Act. The 11th Circuit Court of Appeals held that, based on the Act's express preemption provision and savings provision, the Safety Act did not expressly preempt state common-law claims. Because of the existence of express preemption provisions in the Safety Act, under *Cipollone*, implied preemption analysis could not be used. The 11th Circuit revisited its holding in *Taylor v. General Motors Corp.*, 875 F.2d 816 (11th Cir.1989), which held that a state tort action based on the failure of a manufacturer to install air bags was not *expressly* preempted by the Safety Act but was *impliedly* preempted by the Safety Act. In *Myrick* the 11th Circuit, bound by the *Taylor* panel's holding and unchanged by *Cipollone*, concluded the Safety Act still did not expressly pre-empt common law liability for a safety defect which is addressed by a safety standard under the Act. However, because of *Cipollone*, the 11th Circuit was bound not to follow its holding in *Taylor* that the claims were barred under the doctrine of implied preemption. Thus, the plaintiffs' claims in *Myrick* were *not preempted* by the Safety Act.

In *Myrick*, the 11th Circuit Court, in reaching its conclusion the preemption provision in the Safety Act is a "reliable indicium of congressional intent" construed the Safety Act's preemption provision and the savings clause as both being preemption provisions in the material sense of the word because they both deal with the subject of what is and what is not pre-empted by the Act. In the Safety Act, Congress did not explicitly say

that common law liability was pre-empted but it did explicitly say that common law liability was saved.[7] *Myrick*, at 1528. Because of the savings clause, the 11th Circuit concluded the Safety Act could not be construed as unambiguously manifesting an intent to pre-empt the plaintiffs' common law claims.[8]

■ We think the reasoning in *Myrick* is sound and comports with the directives of the United States Supreme Court decision *Cipollone*. Standard 222, established by federal law under the Safety Act, sets forth the requirements for school bus passenger seating protection and restraining barriers for buses with a G.V.W.R. of 10,000 or more. The Standard does not require seatbelts for passengers in these buses. Nor do the State Minimum Specifications require seatbelts for passengers in these buses. Although the Safety Act's safety standard arguably addresses the defect here claimed (the absence of seat belts in buses over 10,000 G.V.W.R.), the Safety Act specifically and expressly through its preemption provisions, saved this state tort cause of action through its savings provision, 15 U.S.C. § 1397(k). This action is accordingly, not expressly preempted by federal law.

As an additional ground for summary judgment, Carpenter maintained the bus was not "dangerously defective" as a matter of law because no state or federal law required them to install seatbelts in the bus. In support, *Carpenter* cited 70 O.S.1991, § 9–109 and *Dentson v. Eddins & Lee Bus Sales, Inc.*, 491 So.2d 942 (Ala.1986). The Appellants' cause of action is grounded both in negligence and in manufacturer's product liability. They maintain the bus was defective in design because it had no seatbelts for passengers and that Carpenter failed to warn of the risk of travelling in a school bus without seat belts. They also alleged Appel-

---

6. The Federal Aviation Act contains a savings clause, and prior to 1978, did not contain an express preemption clause.

7. The savings clause in the Safety Act provides: "Compliance with any Federal motor vehicle safety standard issued under this subchapter

does not exempt any person from any liability under common law." 15 U.S.C. § 1397(k).

8. See also *Hernandez–Gomez v. Leonardo*, 180 Ariz. 297, 884 P.2d 183 (1994).

lees were negligent in designing the bus without seat belts.

 Under Oklahoma law, a plaintiff must prove three elements to recover under manufacturer's product liability: first, that the product was the cause of the injury; second, that a causally related defect existed in the product at the time it left the manufacturer's possession and control; and third, that the defect made the product unreasonably dangerous to the plaintiff or his property. *Smith v. United States Gypsum Company*, 612 P.2d 251 (Okla.1980); *Karns v. Emerson Electric Co.*, 817 F.2d 1452 (10th Cir. 1987). The trial court granted summary judgment on the basis of the third element: that the lack of seat belts in the bus did not as a matter of law make the bus unreasonably dangerous. In products liability actions, something is unreasonably dangerous if it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics". *Smith*, at 253 quoting *Kirkland v. General Motors Corporation*, 521 P.2d 1353 (Okla.1974). An alleged defect in a product may be the result of a problem in a product's design or manufacture or it may be the result of inadequate warnings regarding use of the product. *Holt v. Deere & Company*, 24 F.3d 1289, 1292 (10th Cir. 1994).

70 O.S.1991, § 9–109 provides in pertinent part:

The State Board of Education is hereby authorized to request a price list and a complete description and specifications of any transportation equipment to be offered for sale to any school board or board of education of any district in the State of Oklahoma.

The State Board of Education shall examine such equipment to determine whether or not such equipment meets the requirements of the National School Bus Standards and such other specifications as the State Board of Education may determine as necessary to provide safe transportation for pupils to and from school and shall approve for sale to all schools in the State of Oklahoma transportation equipment, including bus bodies and chassis, which equipment meets or exceeds the specifications provided for the National School Bus Standards and such other specifications as the State Board of Education may deem as necessary. * * *

 Carpenter maintains this section of law is sufficient to show the Oklahoma Legislature's intent that buses of the type in issue here cannot be found "dangerously defective" as a matter of law because the buses have no passenger seat belts. Section 9–109 authorizes the State Board of Education to examine school buses to determine whether they meet the federal standards and the State Department of Education standards. The Section authorizes the Board to approve sales to schools of buses which *meet or exceed* the federal and state standards. This statute does not, as the statute did in *Dentson*, supra, directly address the requirements of seat belts in school buses.[9] In fact, this Section indicates the State Board of Education may approve bus sales which meet or *exceed* state and federal standards. Although the "Oklahoma *Minimum* Specifications for School Buses", which are promulgated by the Oklahoma State Department of Education, only require school buses of this type to have a seat belt for the driver, we cannot say that these administrative specifications are a clear indication of Oklahoma *legislative* intent and are to be given the

---

9. In *Dentson*, injured school children brought a products liability action against a school bus manufacturer and dealer because alleging that the defendants breached the Alabama Extended Manufacturer's Liability Doctrine by manufacturing and selling an unreasonably dangerous school bus. The Supreme Court of Alabama affirmed the trial court's judgment dismissing the cause of action. In Alabama, the Alabama Legislature had enacted a detailed section of law which required all school buses to be equipped with a seat belt for the driver and that the school bus driver was required, and subject to dismissal for failure, to wear a seat belt. The Alabama Court concluded the Legislature specifically debated and considered the question of passenger seat belts for school buses and that the Legislature, through this section of law, specifically decided passenger seat belts need not be on school buses.

same consideration as a statute, as in *Dent-son.*

It is clear that compliance by a manufacturer with federal safety standards does not establish that an automobile is not defectively designed as a matter of law. *Murphy v. Nissan Motor Corporation in U.S.A.,* 650 F.Supp. 922, 929 (E.D.N.Y.1987); *Karns v. Emerson Electric Co.,* 817 F.2d 1452, 1457 (10th Cir.1987). Whether the bus in question was defectively designed or not is a question of fact for the jury.[10]

On a motion for summary judgment there can be no trial of fact issues since its function is to determine whether there are any genuine issues as to material facts. *Gilmore v. St. Anthony Hospital,* 598 P.2d 1200 (Okla.1979). To avoid summary judgment, an opposing party need only show that evidence regarding whether the product was defective is subject to conflicting interpretations of such nature that reasonable minds might differ as to its significance. *Barber v. General Electric Company,* 648 F.2d 1272, 1276 (10th Cir.1981). Appellants submitted evidentiary material from which reasonable minds could reach different conclusions.

We conclude the trial court erred in granting summary judgment to Carpenter and that the trial court erred in denying Appellants' motion for new trial, reconsideration and re-examination. Because summary judgment was improper, we need not decide whether Carpenter's motion to this Court to strike items contained in Appellants' motion for new trial should be granted or denied. The judgment of the trial court is REVERSED and this cause is REMANDED for further proceedings.

JONES, J., concurs.

JOPLIN, J., concurs in part and dissents in part.

---

10. Carpenter correctly points out that in a *negligence* action, that an automobile manufacturer has no duty to warn of the consequences of the nonuse of seat belts. *Berry v. Eckhardt Porsche Audi, Inc.,* 578 P.2d 1195 (Okla.1978). See also *Grover v. Superior Welding, Inc.,* 893 P.2d 500 (Okla.1995).