Doug **DUANE** and Eileen
Duane, Appellants,

v.

**OKLAHOMA GAS & ELECTRIC
COMPANY, an Oklahoma
corporation, Defendant,**

**Shell Oil Company, a Delaware
corporation, and Chevron
U.S.A., Inc., Appellees.**

No. 71847.

Supreme Court of Oklahoma.

July 7, 1992.

John W. Norman, Bruce W. Pitzer, Emmanuel E. Edem, Law Offices of John W. Norman, Inc., Oklahoma City, for appellants.

Richard O. Faulk, Houston, Tex., Gary M. Chubbuck, Robert S. Lafferrandre, Pierce, Couch, Hendrickson, Johnston & Baysinger, Oklahoma City, for appellee Shell Oil Co.

John E. Bailey, Margaret M. McKay, Houston, Tex., Edwin S. Hurst, Boone, Smith, Davis & Hurst, Tulsa, for appellee Chevron, U.S.A., Inc.

HARGRAVE, Justice.

We granted certiorari to review a decision of the Court of Appeals, Division IV, that reversed and remanded the trial court's granting of summary judgment to defendants Shell and Chevron. Plaintiff's employer, Trayer Engineering Corporation, a California corporation, is the manufacturer of large oil-insulated vacuum switches commonly used in the electrical industry. Trayer Engineering's president, Frank Trayer, an electrical engineer, designed and patented these oil-filled switches. One of the switches manufactured by Trayer was sold to Oklahoma Gas & Electric Company. The switch failed while in use by O.G. & E. (it had exploded internally and the tank sides were expanded approximately three inches on all sides) and was shipped back to Trayer for diagnostic tests. The switch tank's dimensions were approximately four feet wide by four feet long, with a depth of approximately four feet, and it had been filled with insulating oil, supplied by Shell and Chevron, from Trayer's own 10,000–gallon tank. Trayer stated that the type of oil required was simply transformer insulating oil, very readily available in the industrial marketplace.

In order to discover the cause of the switch's failure, Trayer instructed his employees to drain the switch of the oil remaining inside before cutting open the tank, as they had done many times in the past. This time, however, Trayer additionally instructed plaintiff Duane to purge the switch with compressed air before grinding it open to inspect the inside. Duane was injured when he began grinding and the tank exploded. Duane sued, among others, Shell and Chevron [1], for strict liability and negligence, arguing that Shell and Chevron were liable to him for their failure to warn of the dangerous propensities of their insulating oil.

There was no claim that the oil supplied by Shell or Chevron was improperly manufactured or contaminated; thus it will be considered defective only if it was unreasonably dangerous and there was failure to warn of its dangerous characteristics and the failure to warn was the cause of the plaintiff's injury. *See, Smith v. U.S. Gypsum Co.,* 612 P.2d 251, 253–254 (Okla.1980), *Cunningham v. Charles Pfiz-*

---

1. Duane originally sued Shell Oil Company and Shell brought in Chevron as a third-party defendant. Duane filed an amended petition adding Chevron as a party defendant. Chevron alleged that Duane did not get the trial judge's permission before filing his amended petition and that the statute of limitations had run as to Chevron before Duane obtained permission from the trial judge. The trial judge ruled that he would have permitted the amendment, and made his approval retroactive to the date of filing the amended petition. Because we find no breach of duty on the part of Shell or Chevron, we have not addressed this issue.

*er & Co., Inc.,* 532 P.2d 1377, 1383 (Okla.1975). The duty to warn of any dangerous character of their product arises only if they had no reason to expect those who use the product to discover the condition and realize the danger involved. *Mayberry v. Akron Rubber Machinery Corp.,* 483 F.Supp. 407, 413 (N.D.Okla.1979). Duane says that the insulating oil was transformed into a volatile substance by a power surge through it while in use by O.G. & E. This, Duane alleges, transformed the oil so that when combined with the compressed air pumped in, was ignited by the grinder. Plaintiff claims that the defendants knew of this propensity and failed to warn Trayer Engineering. Duane argues that a product can be unreasonably dangerous if in foreseeable uses it creates danger to the user, and that courts frequently have ruled that a manufacturer must give an appropriate warning of any known dangers which the user of his product would not ordinarily discover. Shell and Chevron argue that they had no legal duty to warn because they were merely bulk suppliers of insulating oil to the manufacturer of an oil-insulated vacuum switch, designed according to the specifications of the manufacturer, and that they were not responsible for the ultimate design and construction of the switch. Further, they argue, Trayer, as the inventor of the switching process, was a knowledgeable user with specific, national expertise in this area of electrical switches, and thus, needed no warning concerning the effects of insulation oil. Finally, they argue, *even if* they had a legal duty to warn, as a matter of law the failure to warn was not the proximate cause of plaintiff's injuries.

A product is not defective when it is safe for normal handling and consumption and there is no duty to warn where the product is used in an unlikely, unexpected or unforeseeable manner. Only where the seller has reason to anticipate that danger may result from a particular use, may he be required to give adequate warning of the danger, and a product sold without such warning is in a defective condition. Restatement of Torts (Second), § 402A, Comment h. But there is no duty on a manufacturer or seller to warn of a product-connected danger which is obvious or generally known, and there is no duty to warn a knowledgeable user of the product of the dangers associated therewith. *Eyster v. Borg–Warner Corp.,* 131 Ga.App. 702, 206 S.E.2d 668 (1974). A duty to warn must also be based upon the foreseeability that the user would use the product in that way, the type of danger involved, and foreseeability of the user's knowledge of the danger. The plaintiff must establish that the failure to warn was a proximate, producing cause of the injuries received. *Hagan v. EZ Manufacturing Co.,* 674 F.2d 1047, 1052 (5th Cir.1982).

The general rule as to a supplier's duty to warn of known dangers in the ordinary use of its product is set out in Restatement of Torts (Second), § 388:

"One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

We find that neither (a) nor (b) above is present in the case at bar. The use for which the chattel in this case was supplied was for insulating oil to be used in oil-filled vacuum switches designed and manufactured by Trayer Engineering. The oil was not inherently dangerous for the use for which it was supplied: as insulating oil. Plaintiffs' own allegations are that the oil became dangerous when a variety of conditions occurred, such as severe electrical arcing, purging the switch with air, and grinding. In this case the "knowledgeable

user" is himself a manufacturer. Where the danger or potentiality of danger is known or should be known to the user, the duty to warn does not attach. *Mayberry v. Akron Rubber Mach. Corp., supra,* at p. 413, and cases cited therein. Trayer was or should have been aware of the properties of insulating oil and electricity in the switches he designed. Shell and Chevron supplied a type of oil specified by Trayer for use in an oil-filled electrical switch of his own design and manufacture. Shell and Chevron had no control over the use of their product in Trayer's switch. Their oil was delivered and co-mingled into 10,000–gallon tanks in Trayer's manufacturing plant. There is no allegation that the oil was defective or contaminated when it left the suppliers' hands. The oil was supplied for the very purpose invented by Trayer. Trayer was in charge of the installation and testing of his switch and he wholly controlled what was done that day. The unfortunate fact is that on this occasion Trayer ordered air pumped into the switch and thereby caused a volatile mixture. There was no reason to anticipate that a knowledgeable user, like Trayer, would create a dangerous situation by pumping compressed air into the switch from which the oil had been drained, and then grind into that tank. The scope of the duty upon Shell and Chevron does not depend upon whether Trayer did not in fact know of the dangerous properties, but whether he *should have known.* If no warning is required to be given by the manufacturer to a purchaser who is well aware of the inherent dangers of the product, there is no duty on the part of the manufacturer to warn an employee of that purchaser. *Marker v. Universal Oil Prod. Co.,* 250 F.2d 603 (10th Cir.1957), *Mays v. Ciba–Geigy Corp.,* 233 Kan. 38, 661 P.2d 348 (1983).

In *Mays,* the Kansas supreme court upheld granting of summary judgments for defendant manufacturer and defendant supplier on the failure to warn issue. The Court stated that because in that case some of the manufacturer's products were used with products manufactured by others, any failure to warn must be predicated on breach of some duty to instruct on proper procedures of testing the completed sys-

tem. The installer was in the business of hooking-up gas wells. The *Mays* court stated that the installation of a gas pipeline system is obviously a highly specialized field of endeavor and that inherent in installation of a system to transport natural gas under pressure from one place to another is the risk of fire and explosion. The danger of explosion and fire during such activities is common knowledge. The determination of the testing procedures to be utilized was under the control of the person in charge of the installation, and it was held unreasonable to hold that the supplier's employee had a duty to refuse to sell the installer the pipeline component parts in question until he explained to him the fundamentals of pipeline installation and testing procedures or had required him to read the manufacturer's installation manual. To require that the manufacturer or supplier were under a duty to instruct the plaintiff in basic pipeline laying and system testing would place an impossible burden on manufacturers and sellers of industrial products.

We find that Shell and Chevron had no duty to warn a knowledgeable user and no duty to warn of dangers inherent in the task or which are created by oversight or negligence of the contractor or fellow employees. *Welch v. Heat Research Co.,* 644 F.2d 487 (5th Cir.1981), *Scott v. Thunderbird Industries,* 651 P.2d 1346 (Okla.App.1982). Finding ourselves in agreement with trial court's ruling that there was no duty to warn Duane on the part of Shell or Chevron, we do not address the other issues raised in the briefs.

OPINION OF THE COURT OF APPEALS IS VACATED. TRIAL COURT'S GRANT OF SUMMARY JUDGMENT IS AFFIRMED.

OPALA, C.J., HODGES, V.C.J., and LAVENDER, SIMMS, SUMMERS and WATT, JJ., concur.

ALMA WILSON, J., concurs in part and dissents in part.