1999 OK CIV APP 115

Dewayne **BOHNSTEDT**,
Plaintiff/Appellant,

v.

**ROBSCON LEASING L.L.C.**, Northern Equipment Co., John Deere Corporation, and John Does I–V, Defendants/Appellees.

No. 92,860.

Court of Civil Appeals of Oklahoma, Division No. 1.

Aug. 27, 1999.

Certiorari Denied Nov. 10, 1999.

Robert L. Huckaby, Barry B. Burkhart, Oklahoma City, Oklahoma, for Appellant.

Jo Anne Deaton, Tulsa, Oklahoma, for Appellee.

**OPINION**

CARL B. JONES, Chief Judge:

¶ 1 This products liability action arises from the accident involving Kathleen Bohnst-

edt, a flag person for Cummins Construction Company, who was fatally injured when a John Deere 770BH Motor Grader backed over her at a road construction site in Enid, Oklahoma. It is undisputed that someone tampered with the reverse warning alarm on the motor grader before the accident, and the alarm was not working when the accident occurred. Mrs. Bohnstedt's husband, Appellant Dewayne Bohnstedt (Bohnstedt), brought this action against Robscon Leasing L.L.C., Northern Equipment Co., and John Deere Corporation (John Deere). Prior to this appeal, both Robscon Leasing L.L.C. and Northern Equipment Co. were dismissed with prejudice by Bohnstedt.

¶2 John Deere filed a Motion for Summary Judgment asserting that it has no duty to warn of obvious dangers and the motor grader had been materially altered after it left John Deere's control. Bohnstedt countered that John Deere's back up alarm system was defective because John Deere was aware that these back up alarms were frequently disconnected and did not attempt either to make the safety device tamper resistant or to warn of the importance of maintaining the back up alarm. On March 15, 1999, the trial court granted John Deere's Motion for Summary Judgment. Bohnstedt appeals.

¶3 Summary judgment is proper only when the pleadings, affidavits, depositions, or other evidentiary materials establish that there is no genuine issue regarding any material fact, and that the moving party is entitled to judgment as a matter of law. In reviewing, a motion for summary judgment, all inferences and conclusions drawn from the evidence must be viewed in a light most favorable to the party opposing the motion for summary judgment. *Shelley v. Kiwash Electric Coop. Inc.*, 1996 OK 44, ¶15, 914 P.2d 669, 674.

¶4 The elements essential to establish a products liability claim are: 1) that the product was the cause of the injury; 2) the product was defective when it left the control of the manufacturer; 3) the defect made the product unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer. *Dutsch v. Sea Ray Boats, Inc.*, 1992 OK 155, ¶11, 845 P.2d 187, 190. Bohnstedt met this burden.

¶5 Bohnstedt contends that the motor grader was defective because the back up alarm system was easily tampered with and such tampering was foreseeable by the manufacturer. Bohnstedt introduced evidence through John Deere's expert that John Deere was aware that people disable these back up alarm systems. In fact in 1993, John Deere was involved in a lawsuit involving a disabled back up alarm system on a forklift which also backed over and injured someone. Bohnstedt's expert testified that other manufacturers of graders have used tamper resistant screws or have placed the alarm system where obtaining access to the mechanism was extremely difficult. Here, while the back up alarm system is behind a locked compartment, all of the operators of John Deere equipment have keys to this lock. In addition, the battery and oil are behind this locked compartment. Further, evidence was introduced that no tools were required to disconnect the wires and enable the system. Considering as true all evidence favorable to Bohnstedt, sufficient controverted evidence of a design defect was presented to require submission of the question to the jury.

¶6 Bohnstedt's second reason that the back up system is defective is failure to warn the operator of the potential injury to bystanders if this equipment is operated without the back up alarm. Bohnstedt's expert testified that he went to John Deere to purchase a replacement back up alarm system for the John Deere 770HB motor grader and inside the box was a warning which was to be placed within the operator's view. This warning provides: "This vehicle is equipped with a back up alarm. When backing, the ALARM MUST SOUND the operator is responsible for the safe use of this vehicle." However, John Deere does not post the warning on its equipment. Evidence was introduced that the motor grader had a blind spot from which the operator could not see someone standing behind the motor grader and that the back up alarm was installed to warn these bystanders.

¶7 Relying on *Duane v. Oklahoma Gas & Elec. Co.*, 1992 OK 97, ¶5, 6, 833 P.2d 284,

286, John Deere asserts there is no duty to warn a knowledgeable user of the product of the associated dangers and produced evidence that the product was not inherently dangerous. The facts are distinguishable from the case at bar. In *Duane,* the contractor, designer of the oil-filled electrical switch being used, had instructed his employee to pump compressed air into the switch from which the oil had been drained, causing a volatile mixture and subsequent injury to the employee. The Supreme Court found that the contractor wholly controlled the operations. Here, the back up alarm system was designed by John Deere to protect bystanders from injury due to the operator being unable to see when backing up, due to a blind spot. Mrs. Bohnstedt, the flag person, was not a knowledgeable operator of the motor grader and the record is devoid of any evidence suggesting she was being directed by the motor grader operator in her duties. She was a bystander. We find that the evidence is disputed as to whether the failure to warn was the proximate, producing cause of Mrs. Bohnstedt's fatal injuries. *Duane v. Oklahoma Gas & Elec. Co.,* supra. Accordingly, this matter is reversed and remanded.

¶8 REVERSED AND REMANDED.

HANSEN, P.J., and ADAMS, J., concur.