2013 OK CIV APP 88

**Ron SWIFT and Shelly Swift, individually and as parents and next friends of B.S., a minor; and B.S., individually, Plaintiffs/Appellants,**

v.

**SERVICE CHEMICAL, INC., a foreign corporation, Defendant/Appellee,**

and

**Havasu Research, LLC, a foreign corporation formerly d/b/a Havasu Pyrotechnics, Inc., an Arizona Corporation; Bert Dunn, individually and d/b/a www.GatlingGuns.com, a foreign corporation; Shawn Singleton, individually; and Kyle Warden, individually, Defendants.**

No. 110943.

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 10, 2013.

---

Joseph T. Acquaviva, Jr., Wilson, Cain & Acquaviva, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Conner L. Helms, Darren R. Cook, Helms Underwood & Cook, Oklahoma City, Oklahoma, for Defendant/Appellee Service Chemical, Inc.

P. THOMAS THORNBRUGH, Presiding Judge.

¶1 Plaintiffs appeal from the trial court's summary judgment in favor of Defendant, Service Chemical, Inc. (SCI), in this action arising from an incident in which the minor Plaintiff, B.S., was severely burned by chemicals that originated with SCI.[1] For the reasons set forth below, we affirm the trial court's judgment.

## BACKGROUND

¶2 On October 14, 2008, nine-year-old B.S. was severely burned when he ignited chemicals spilled from an exploding target kit distributed under the name "Exploding Scarecrow, Jr." (Exploding Scarecrow). For purposes of this review, it is undisputed that Exploding Scarecrow is a binary chemical exploding target which, as packaged and sold, includes the following items enclosed in a large, sealed bag: a small plastic bag filled with potassium perchlorate (an oxidizing agent); another small bag filled with magnalium (a magnesium and aluminum alloy); a larger plastic mixing bag; several small plastic containers; double stick tape; a

---

1. This appeal comes to this Court pursuant to an order by the trial court under 12 O.S.2011 § 994(A), and also pursuant to Supreme Court Rule 1.36. Although SCI did not admit in its trial court answer that it was the original supplier of the chemicals involved in injuring the minor Plaintiff, for purposes of its summary judgment motion that fact was admitted.

spoon; and an instruction/warning sheet. The instruction/warning sheet states: .

## DANGER—EXPLODING—TARGETS

**Warning:** Do not use less than 25 Yards (75 feet) away. Keep away from fire and flames. Do not handle while smoking. Keep out of reach of children. Use proper ear and eye protection during use. Produces loud report when shot, along with large quantities of smoke. Use outdoors or with adequate ventilation. Avoid dropping or impact from outside sources and rough handling. Misuse or failure to follow directions may result in loss of life or limb. Use caution when handling this product.

**Instructions:** Mix small bag into large bag until consistent grey powder is formed. After powder is mixed use included plastic spoon to evenly distribute powder into targets. Shoot targets and scare the birds away and have some fun at the same time.

¶ 3 Plaintiffs alleged the kit was given as a gift to Defendant Kyle Warden (a friend of the minor Plaintiff's teenage sister), by Warden's former teacher, Defendant Shawn Singleton. Singleton received it as a promotional item enclosed with merchandise purchased from Defendant Bert Dunn (a/k/a Bert Guy) d/b/a www.GatlingGuns.com (Dunn), who sold and distributed Exploding Scarecrow over the Internet. Dunn, in turn, obtained Exploding Scarecrow from Defendant Havasu Research, LLC (Havasu), a Pennsylvania corporation. According to Plaintiffs' petition, Havasu is "in the business of manufacturing, marketing, and selling Binary Explosives," and developed and marketed Exploding Scarecrow as an "exploding target for pistols and rimfires." Havasu made Exploding Scarecrow from chemicals purchased in bulk from SCI.

¶ 4 According to the record, Warden brought Exploding Scarecrow to Plaintiffs' home sometime in early October 2008 and obtained permission from B.S.'s parents, Plaintiffs Ron and Shelly Swift, for B.S. to go with Warden to shoot exploding targets with pellet guns. Warden assembled the targets outdoors (on Plaintiffs' property) according to the instruction sheet, but spilled some of the mixed chemicals onto the ground. The targets did not explode as anticipated after being shot with pellet guns. A week or so later, Plaintiffs built a fire near the location where Warden had assembled the targets. B.S. was burned when he attempted to light the spilled chemicals with a match, and the mixture exploded in a flash fire.

¶ 5 Plaintiffs filed this action, asserting claims of negligence and/or products liability against all Defendants. Specifically as against SCI, they alleged negligent failure to warn and strict liability, claiming that inadequate warnings accompanied SCI's sale of the raw chemicals to Havasu. Plaintiffs alleged that SCI is "in the business of selling and distributing technical grade chemicals that are not for consumer end-use," and that SCI knew that Havasu and Dunn were using the chemicals to make exploding targets for public sale.

¶ 6 SCI denied liability and moved for summary judgment, urging the court to find that, as a supplier of component parts of a product manufactured by Havasu and sold by Dunn, SCI could not be liable to Plaintiffs as a matter of law. Plaintiffs opposed the motion.

¶ 7 Evidence submitted by the parties established that SCI is a distributor of chemicals, some of which are hazardous, that are intended for industrial use, and that—*as alleged in Plaintiffs' petition*—the chemicals as sold are not intended for "consumer end use." Sales of the chemicals to Havasu were accompanied by Material Safety Data Sheets (MSDS) as required by federal regulations, and contained warnings of hazards associated with use or exposure to the chemicals, as well as dangers associated with mixing certain chemicals with others.

¶ 8 Deposition testimony by SCI's president, Benjamin Cutler, established that SCI does not sell or distribute any chemical products that qualify as an "explosive" as defined by the federal Bureau of Alcohol, Tobacco and Firearms (ATF), even if SCI's customer uses the chemicals to make explosives. SCI does not mix the chemical products it sells, does not "manufacture or distribute consum-

er or commercial pyrotechnics," and generally does not open or repackage the containers of chemicals it distributes.[2] Culver unequivocally confirmed that SCI does not sell "any chemical compound, mixture or device, the primary or common purpose of which is to function by explosion."

¶ 9 SCI also generally does not know, nor does it inquire into, "the specific end use" that a customer intends to make of a chemical product or products, nor is it required to do so by state or federal regulations.[3] Even so, for some sales SCI requires a customer to provide a copy of its current, valid ATF license/permit. Havasu—which at the time of the sales at issue herein operated under the name Havasu Pyrotechnics—was one such manufacturer, and always provided its ATF license/permit. According to Culver's uncontradicted testimony, SCI relied on the permit as a demonstration that the chemicals would be "used in line with applicable regulations" governing the manufacture of pyrotechnic devices or explosives. The permit demonstrates that a chemicals purchaser is knowledgeable in handling and use of the chemicals, and means that there is "no need for us to inquire any further" as to a chemical's use. Although SCI was aware that Havasu used SCI's products for "pyrotechnic applications," Culver denied knowing that Havasu intended to use, or in fact used, chemicals purchased from SCI to manufacture Exploding Scarecrow for sales to the general public.

¶ 10 In response to SCI's motion, Plaintiffs produced evidence that included a 2011 ATF newsletter, stating that ATF does not regulate the sale of binary explosive target kits because the individual components are not considered "explosives," but the agency nonetheless recognizes that "when the binary components are combined, the resulting mixture is an explosive material subject to" ATF regulations.[4] Plaintiffs argued that fact issues remained as to SCI's potential liability for failure to warn an "end user" or "end consumer" of "the dangers associated with mixing potassium perchlorate and magnalium"; for failure to investigate and discover the uses that Havasu intended for the chemicals, and for selling the chemical products without an assurance that such a warning would be passed along to consumers. They also argued that the chemicals should not be considered "component parts" or "raw materials," because the chemicals reached the consumer in the same condition they were sold, though packaged differently.

¶ 11 Plaintiffs did not provide evidence to support their allegation that, prior to being sued in 2008, SCI actually knew Havasu would use chemicals purchased from SCI in Exploding Scarecrow, or that ATF had distributed information concerning such products and their use. Plaintiffs argued, instead, that SCI followed a business practice of "willful ignorance," and should not be excused from a duty to warn of the hazards associated with the "foreseeable uses of [its] product" beyond the warnings contained in the MSDS that accompanied the chemical sales. Plaintiffs did not propose specific warning language that they would consider sufficient to have prevented B.S.'s injury. They also did not suggest the manner or means by which SCI could have ensured Plaintiffs received such a warning (short of not selling the chemicals to Havasu).

---

**2.** An exception would occur if the company were asked to "screen" or "mill" a particular chemical to produce a different grain size than what SCI had available. Culver testified the only two chemicals that SCI screens or mills are potassium nitrate and barium nitrate, neither of which is involved in this action.

**3.** Culver testified that SCI does not, "as a matter of practice," ask its customers how they plan to use the chemicals supplied by SCI. ATF regulations impose no requirements on SCI with regard to its chemical sales, even if the chemicals sold by SCI are to be used by a purchaser to manufacture high level or low level explosives.

Culver denied that SCI gives advice to its customers as to what chemicals to use in a particular product or manufacturing application, stating that "if I don't have knowledge, I'm not going to provide the guidance ... I'm not in the business of ... manufacturing anything."

**4.** "ATF Explosives Industry Newsletter," December 2011, pp. 4–5 (attached as Exhibit 5 to Plaintiffs' Response to Summary Judgment). See also https://www.atf.gov/explosives/how-to/binary-explosives.html (last checked September 9, 2013).

¶ 12 The trial court granted SCI's motion and entered final judgment pursuant to 12 O.S.2011 § 994(A). Plaintiffs filed this appeal.

## STANDARD OF REVIEW

¶ 13 Whether a trial court has properly granted summary judgment presents a question of law which this Court reviews *de novo. Manley v. Brown,* 1999 OK 79, ¶ 22, 989 P.2d 448, 455. "Like the trial court, we examine the pleadings and summary judgment evidentiary materials submitted by the parties to determine if a genuine issue of material fact is in dispute." *Prince v. B.F. Ascher Co.,* 2004 OK CIV APP 39, ¶ 4, 90 P.3d 1020, 1024. "Only if the court should conclude that there is *no* substantial controversy over any material fact and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor." *Manley* at ¶ 22, 989 P.2d at 455.

## ANALYSIS

¶ 14 Though not separately argued, Plaintiffs' theories of recovery sound in both negligence and strict liability. Each theory offers an avenue of potential recovery against a manufacturer or supplier of defective products, and, under either theory, the question of whether the supplier had a duty to the plaintiff may be dispositive. *See, e.g., Spence v. Brown–Minneapolis Tank Co.,* 2008 OK CIV APP 90, 198 P.3d 395; *Prince v. B.F. Ascher Co.,* 2004 OK CIV APP 39, 90 P.3d 1020.

*Strict Products Liability*

¶ 15 Strict liability in Oklahoma is grounded in § 402A of the Restatement (Second) of Torts ("Restatement § 402A"), which imposes liability on a seller of "any product in a defective condition unreasonably dangerous" to the user or consumer, if "(a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." Restatement § 402A(1); *see also Kirkland v. Gen. Motors Corp.,* 1974 OK 52,

521 P.2d 1353 (Court syllabus). Plaintiffs here do not argue that the chemicals supplied by SCI were defective in and of themselves; i.e., that the chemical products did not operate as they should have. Rather, Plaintiffs argue the chemicals were "in a defective condition unreasonably dangerous" to Plaintiffs because they left SCI's hands without a warning adequate to anticipate and prevent B.S.'s injury.

¶ 16 As Plaintiffs argue, in strict liability, "[t]he manufacturer of a product has a duty to warn the consumer of potential dangers which may occur from the use of the product when it is known or should be known that hazards exist." *McKee v. Moore,* 1982 OK 71, ¶ 4, 648 P.2d 21, 22. In order to qualify as "unreasonably dangerous," however, "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement § 402A, comment (i). Thus, a supplier's duty to warn extends only to the "ordinary consumer" who purchases the product. Liability is contemplated only if a product does not have a warning sufficient to inform "an ordinary consumer of the product" of its dangerous characteristics, and if the risk of harm is not one that an "ordinary consumer who purchases the product" reasonably would expect. *See Woods v. Fruehauf Trailer Corp.,* 1988 OK 105, ¶¶ 11–14, 765 P.2d 770, 774.

¶ 17 In *Woods,* the Court's decision turned on "the distinction to be made regarding who constitutes an ordinary consumer of a specific product." *Id.* at ¶ 13. The product at issue was a gasoline 'tanker trailer' manufactured by the defendant, and the plaintiff was an experienced driver who, in the course of delivering gasoline to a storage facility, was severely burned. The Court agreed with the defendant that the defendant's duty to provide adequate warnings in the use of the tanker trailer extended only to the "ordinary consumer" who purchases a tanker trailer, and did not include the general public. The "ordinary consumer," according to the Court, is "one who would be foreseeably expected to purchase the product involved"—in this case,

an individual "familiar with the hazards associated with loading, transporting and unloading gasoline." *Id.* at ¶ 14. As such, as a matter of law the defendant had no duty to make its product safer for the plaintiff driver by warning him about matters of which foreseeable users of the product should already be aware—i.e., the hazards of loading and unloading gasoline.

¶ 18 Similarly, in the case at bar the undisputed evidence establishes that Plaintiffs were not "ones who would be foreseeably expected to purchase" the raw chemicals sold by SCI, and thus were not "ordinary consumers of the product" to whom SCI's duty to warn extended. By Plaintiffs' own admission in their Amended Petition, the chemicals were "technical grade" and not intended for use by the general public—i.e., by "end users" or "end consumers." SCI adduced undisputed evidence that its chemical sales were restricted to industrial users such as Havasu, which Plaintiffs admit is a company whose business is the explosives industry, and which SCI requires to produce its ATF license before considering whether to proceed with a sale. Although SCI admitted that its website, which contains a list of its chemical products inventory, was accessible to the general public, Plaintiffs produced no evidence that SCI sold its chemicals to anyone other than industrial consumers. As such, the evidence unequivocally shows that Plaintiffs were not "ordinary consumers of the products" sold by SCI. SCI cannot be liable to them under a strict products liability theory of recovery as a matter of law.

¶ 19 We would reach the same result by applying the standards set forth in Restatement (Third) of Torts § 5, or in Restatement

(Second) of Torts § 388 (discussed below). Section 5, which is specifically directed to products liability, addresses the liability of commercial distributors of "product components for harm caused by products into which components are integrated."[5] Section 5 would impose liability on the supplier of a component part—including components such as "raw materials" supplied to a manufacturer[6]—only when the component itself is defective, or when, among other requirements, the supplier of the component "substantially participates in the integration of the component into the design of the product." Restatement (Third) of Torts, § 5.

¶ 20 As noted above, Plaintiffs do not contend, and no evidence suggests, that the chemicals provided by SCI were defective in and of themselves. Moreover, there is no evidence suggesting that SCI participated in Havasu's design of Exploding Scarecrow. Thus, on this basis alone, under § 5 SCI cannot be liable as a matter of law.

¶ 21 The comments and notes to § 5 further reinforce this conclusion. Especially noteworthy is the following language from the Reporter's Note to comment b, concerning incorporation of raw materials into a finished product:

> The case law imposing a duty to warn *immediate buyers* of general dangers attendant to use of a raw material or component is clear. Sellers of components and raw materials have a duty to provide reasonable warnings.... The issue is whether the seller of a component or raw material has a duty to inform itself about specific applications of its component and a further duty to determine whether the buyer who

5. Pursuant to Restatement (Third) of Torts § 5 (1998):

One engaged in the business of selling or otherwise distributing product components who sells or distributes a component is subject to liability for harm to persons or property caused by a product into which the component is integrated if: (a) the component is defective in itself, as defined in this Chapter, and the defect causes the harm; or (1) the seller or distributor of the component substantially participates in the integration of the component into the design of the product; and (2) the integration of the component causes the product to be defective, as de-

fined in this Chapter; and (3) the defect in the product causes the harm.

"Product defects" are defined in § 2, and incorporate the concept that a product may be defective due to inadequate warnings as to foreseeable risks of harm. The Oklahoma Supreme Court has not addressed Restatement (Third) § 5, but the Court consistently has relied on the Restatement in strict products liability litigation since it recognized the doctrine in *Kirkland v. General Motors Corp.*, 1974 OK 52, 521 P.2d 1353.

6. Comment c to § 5 provides that "raw materials" are considered "component parts" covered by this provision.

will integrate it into another product is knowledgeable as to the dangers attendant to that specific application. *No cases have been found imposing such an onerous duty. Indeed, the entire thrust of the case law is that when the product component is not defective in itself, liability only arises when the component seller substantially participates in the design of the final integrated product.* (Emphasis added; citation omitted).

¶ 22 The applicability of § 5 to the current case is clear. We reject Plaintiffs' contention that the section does not shield SCI because the chemicals were not "component parts" because they reached Plaintiffs in the "same condition" that they were sold. The argument ignores the undisputed evidence that Havasu made a substantial change in the way the chemicals were packaged and distributed, and in instructing how they should be used. The argument also ignores the crux of Plaintiffs' claim, which is that the injury-inflicting accident would not have occurred if SCI had anticipated Havasu's inappropriate incorporation of the chemicals into a product design that required mixture of the chemicals in order to achieve the desired explosive effect. "Inappropriate decisions regarding the use of [raw] materials are not attributable to the supplier of the raw materials but rather to the fabricator that puts them to improper use." Restatement (Third) of Torts, § 5, comment c.

¶ 23 The information and warnings that accompanied SCI's sale to its "immediate buyer" were set forth at length in MSDS as required by federal regulations, and described the hazards inherent in the chemicals and their use. To follow Plaintiffs' reasoning would essentially require us to hold that a raw chemical supplier must anticipate that its purchaser would intentionally disregard the MSDS warnings and repackage the raw materials for sale to an unsophisticated consum-

er, who, though not appreciating the dangers of mixing the chemicals, would use them as intended by the intermediary manufacturer; but then leave chemical residue in a place where an unsupervised child might light the residue at close range with a match. Imposing such a requirement on an industrial supplier like SCI is not realistic, practical, or legally sound.

*Negligence*

¶ 24 As noted above, Plaintiffs also assert that SCI is liable for negligent failure to warn of use of the chemicals. Under a negligence theory of recovery, a seller or supplier of a product has a duty to use reasonable care to provide adequate warnings or instructions to avoid injury to a foreseeable plaintiff. An essential element to recovery is that the defendant owed the plaintiff a duty of care under the circumstances presented. "Just because the defendant has created a risk which harmed the plaintiff ... does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable." *Nicholson v. Tacker*, 1973 OK 75, ¶ 11, 512 P.2d 156, 158. Whether a duty of care exists in a particular case is a question of law for the court to determine. *Prince v. B.F. Ascher Co.*, 2004 OK CIV APP 39, 90 P.3d 1020.

¶ 25 Restatement (Second) of Torts, § 388, titled "Chattel Known to be Dangerous for Intended Use," imposes liability on a supplier of a dangerous chattel to those whom the supplier "should expect" to use the chattel, where the supplier "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." [7]

¶ 26 In *Duane v. Oklahoma Gas & Electric Co.*, 1992 OK 97, ¶ 4, 833 P.2d 284, 286, the Court relied on § 388 to find that the suppliers of insulating oil had no duty to warn their purchaser—a manufacturer of large oil-insulated vacuum switches—that the oil might be

---

7. Section 388 states:
One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier *should expect* to use the chattel ... in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for

the use for which it is supplied, and *(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition,* and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous. (Emphasis added).

transformed into a volatile substance if it was subjected to compressed air and an electrical spark. The Court noted that the defendant suppliers "had no control over the use of their product in [the] switch," and had "no reason to anticipate that a knowledgeable user, like [the purchaser] would create a dangerous situation" that might injure the users of the switch (in this case, the purchaser's employees). *Id.* at ¶ 6, 833 P.2d at 287. The Court applied this "knowledgeable user" defense to the plaintiffs' legal theories of strict liability and negligence alike, to find that the seller of a product had no duty to warn "a knowledgeable user of the product of the dangers associated therewith." 1992 OK 97 at ¶ 4, 833 P.2d at 286. The Court further noted that it would place "an impossible burden" on suppliers of such industrial products to require them to instruct or warn their industrial purchasers in basic aspects of their trade which should already be known to them. *Id.* at ¶ 7.

¶ 27 The Court's reasoning in *Duane* applies here as well. The undisputed evidence shows that SCI was aware of no intended purpose of the chemicals other than for use by Havasu *as a holder of an ATF explosives license.* Indeed, the fact that Havasu was aware of exactly what chemicals to include in the Exploding Scarecrow kit in order to assure an explosion, to include a warning specifying how far away to stand and what to anticipate—and to further assure that the product as sold fell outside the regulatory power of ATF—indicates clearly that Havasu had special expertise and was knowledgeable in the use of the chemicals.

### CONCLUSION

¶ 28 "Once a defendant has introduced evidentiary materials showing no substantial controversy as to one fact material to plaintiff's cause of action and this fact is in defendant's favor," the burden shifts to the plaintiff to show that "evidence is available which would justify a trial of the issue." *Runyon v. Reid,* 1973 OK 25, ¶ 13, 510 P.2d 943, 946. If such evidence is not presented, summary judgment should, if appropriate, be entered against the non-moving party.

¶ 29 We find that the evidence demonstrates SCI cannot be liable to Plaintiffs as a matter of law because the undisputed evidence demonstrates that SCI had no duty to warn Plaintiffs of the dangerous propensities of the product designed and manufactured by SCI's purchaser, Havasu. The trial court's judgment was correct, and is affirmed.

¶ 30 **AFFIRMED.**

GOODMAN, J., and RAPP, J., concur.