MCCLAIN v. BRAINERD CHEMICAL COMPANY INC.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:MCCLAIN v. BRAINERD CHEMICAL COMPANY INC.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 MCCLAIN v. BRAINERD CHEMICAL COMPANY INC.
2019 OK CIV APP 15
436 P.3d 752
Case Number: 117356
Decided: 01/02/2019
Mandate Issued: 03/13/2019
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2019 OK CIV APP 15, 436 P.3d 752

 

LISA MCCLAIN, individually and as Special Administrator of the Estate of B.L.M., a minor, Plaintiff/Appellant,
v.
BRAINERD CHEMICAL COMPANY, INC., an Oklahoma corporation, Defendant/Appellee,
and
PSYCHO PATH, LLC, an Oklahoma limited liability company; VICTOR R. MARQUEZ and SUZETTE MARQUEZ, individually; and WEST TEXAS DRUM COMPANY, LTD, II, a Texas limited partnership, Defendants,
and
PSYCHO PATH, LLC, an Oklahoma limited liability company; VICTOR R. MARQUEZ and SUZETTE MARQUEZ, individually; and BRAINERD CHEMICAL COMPANY, INC., Third-Party Plaintiffs,
v.
ROBERT THOMAS, an individual, Third-Party Defendant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE CAROLINE WALL, TRIAL JUDGE

AFFIRMED

Frank W. Fraiser, FRAISER, FRAISER & HICKMAN, LLP, Tulsa, Oklahoma, for Plaintiff/Appellant

James K. Secrest II, Jennifer L. Struble, SECREST, HILL, BUTLER & SECREST, Tulsa, Oklahoma, for Defendant/Appellee/Third-Party Plaintiff Brainerd Chemical Company, Inc.

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Plaintiff/Appellant Lisa McClain, individually and as Special Administrator of the Estate of B.L.M., a minor, appeals from the trial court's order granting the motion for summary judgment of Defendant/Appellee Brainerd Chemical Company, Inc. The order states that "all claims presented against [Brainerd] by [Plaintiff] are hereby dismissed, with prejudice," and the trial court certified its order as a final order "pursuant to 12 O.S. § 994(a), [as] there is no reason for delay[.]"

¶2 For purposes of summary judgment, the parties agree B.L.M. was employed by Defendant/Third-Party Plaintiff Psycho Path, LLC to work at its haunted house. They further agree that B.L.M. was fatally injured as a result of using a torch to open an empty barrel that had previously contained the chemical toluene.[1] Plaintiff admits B.L.M. "was not killed by using a torch on a barrel full of toluene, but on an empty drum" -- i.e., a drum containing "residual toluene [that] went up in flames and killed [B.L.M.]" Plaintiff asserts "[i]t was foreseeable to [Brainerd]" -- which is in the business of selling drums full of toluene[2] -- that an "empty drum would be resold and [Brainerd] did not include proper warnings about the use of resold drums" containing residual amounts of toluene. Plaintiff asserts "[t]he drum put into commerce by [Brainerd] was defective and unreasonably dangerous and caused the injuries to [B.L.M.]," and Plaintiff has also asserted a theory of ordinary negligence against Brainerd based on this failure to warn as to the dangers of residual toluene.

¶3 From the trial court's order granting summary judgment in favor of Brainerd, Plaintiff appeals.

STANDARD OF REVIEW

¶4 "This appeal stems from a grant of summary judgment, which calls for de novo review." Woods v. Mercedes-Benz of Okla. City, 2014 OK 68, ¶ 4, 336 P.3d 457 (citation omitted). Under the de novo standard, this Court is afforded "plenary, independent, and non-deferential authority to examine the issues presented." Harmon v. Cradduck, 2012 OK 80, ¶ 10, 286 P.3d 643 (citation omitted). Summary judgment is appropriate "[i]f it appears to the court that there is no substantial controversy as to the material facts and that one of the parties is entitled to judgment as a matter of law[.]" Okla. Dist. Ct. R. 13(e), 12 O.S. Supp. 2013, ch. 2, app.

ANALYSIS

¶5 As indicated above, Plaintiff states it is suing Brainerd "in manufacturers' products liability." Plaintiff's contention in this regard is that "the drum was defective in that there was no warning that it was flammable even when empty, and that this made the drum unreasonably dangerous -- dangerous beyond the extent contemplated by an ordinary user." Plaintiff does not dispute that the drum included a warning addressing the dangers of a drum full of toluene, but Plaintiff asserts that because this "limited warning on the drum [did] not contain the danger of an empty drum, . . . it was defective at the time it left [Brainerd's] control." Plaintiff has also asserted a theory of ordinary negligence against Brainerd, and states in this regard that Brainerd was "in a position to need to warn" B.L.M. and/or his employer regarding the dangers of residual toluene, and breached its duty to B.L.M. and/or his employer "by failing to do so."

I. Products Liability

¶6 The Oklahoma Supreme Court has identified three elements to a products liability claim: the defect must have (1) caused the injury in question, (2) existed at the time it left the manufacturer's control, and (3) made the product unreasonably dangerous. Kirkland v. Gen. Motors Corp., 1974 OK 52, ¶ 0, 521 P.2d 1353 (Syllabus by the Court) (adopting § 402A of the Restatement (Second) of Torts (1965)). "The defect can stem from either a dangerous design or an inadequate warning about the product's dangers." Braswell v. Cincinnati Inc., 731 F.3d 1081, 1085 (10th Cir. 2013) (applying Oklahoma law). See also Swift v. Serv. Chem., Inc., 2013 OK CIV APP 88, ¶¶ 15-16, 310 P.3d 1127 (The plaintiffs in Swift argued the chemicals in question were defective "because they left [the manufacturer's] hands without a warning adequate to anticipate and prevent [the alleged] injury," and the court explained that "[l]iability is contemplated . . . if a product does not have a warning sufficient to inform 'an ordinary consumer of the product' of its dangerous characteristics . . . ." (citation omitted)).

¶7 As indicated above, Plaintiff in this case asserts a defect existed in the form of an inadequate warning. "The manufacturer of a product has a duty to warn the consumer of potential dangers which may occur from the use of the product when it is known or should be known that hazards exist." Swift, ¶ 16 (quoting McKee v. Moore, 1982 OK 71, ¶ 4, 648 P.2d 21).

In order to qualify as "unreasonably dangerous," however, "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement § 402A, comment (i). Thus, a supplier's duty to warn extends only to the "ordinary consumer" who purchases the product. Liability is contemplated only if a product does not have a warning sufficient to inform "an ordinary consumer of the product" of its dangerous characteristics, and if the risk of harm is not one that an "ordinary consumer who purchases the product" reasonably would expect. . . .

Swift, ¶ 16 (emphasis added).

¶8 Thus, "[t]he distinction to be made regarding who constitutes an ordinary consumer of a specific product is of important consequence." Woods v. Fruehauf Trailer Corp., 1988 OK 105, ¶ 13, 765 P.2d 770. "Only when a defect in the product renders it less safe than expected by the ordinary consumer will the manufacturer be held responsible." Id. (citation omitted). However, in Woods, where the product in question was a gasoline tanker trailer, the ordinary consumer was articulated by the Court as "one who is familiar with the hazards associated with loading, transporting and unloading gasoline[.]" Id. ¶ 14. The Woods Court further explained that "an alleged 'defect' may not render the product less safe than expected where the same 'defect' may render the product unsafe as to the general public." Id. The Woods Court again emphasized that "evidence that the tank could have been made 'safer' does not establish that it was less safe than would be expected by the ordinary consumer." Id. ¶ 17.

¶9 In the present case, it is undisputed that Psycho Path, LLC acquired the used and empty (or seemingly empty) barrel in order to use it for its own unique purposes at its haunted house. It is undisputed Psycho Path, LLC was not attempting to purchase toluene; indeed, it purchased, or sought to purchase, an empty drum. Thus, the evidence unequivocally shows B.L.M. and his employer were not ordinary consumers of the product sold by Brainerd. Furthermore, it is undisputed that, as set forth above, the tanks of toluene sold by Brainerd did include a warning addressing the dangers of a drum full of toluene. Although an additional warning setting forth the dangers of residual toluene may have made the product safer to non-ordinary consumers, Oklahoma products liability law does not impose such an obligation on manufacturers or suppliers. Any alleged defect in a warning hinges on the expectations of the ordinary consumer, and, here, the ordinary consumer of the toluene sold by Brainerd would be one "familiar with the hazards associated with" the product.

¶10 Products liability "represent[s] a departure from, and an exception to, the general rule that a supplier of chattels [is] not liable to third persons in the absence of negligence or privity of contract." Restatement (Second) of Torts § 402A cmt. b (1965). Oklahoma's strict products liability is based on § 402A of the Restatement. See Allenberg v. Bentley Hedges Travel Serv., Inc., 2001 OK 22, ¶ 11, 22 P.3d 223.[3] Section 402A provides as follows:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and
(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

¶11 Here, however, it is undisputed Brainerd was not in the business of selling empty drums.[4] Moreover, the product which Brainerd was in the business of selling -- drums of toluene -- was opened and emptied prior to being resold on the secondhand barrel market. Thus, even assuming arguendo that B.L.M. or his employer can properly be viewed as ordinary consumers of Brainerd's product, Brainerd's product was substantially changed in condition prior to reaching them.

¶12 The fact remains, however, that neither B.L.M. nor his employer at the time of the accident can be viewed as ordinary consumers; indeed, it is undisputed they were not consumers at all of the toluene sold by Brainerd, but were, instead, consumers of a secondhand barrel. The circumstances of the present case are remarkably similar to those presented in Thompson v. TCI Products Co., 81 F. SupP.3d 1257 (N.D. Okla. 2015). In Thompson, a worker "was using a plasma cutter to cut lids from secondhand barrels. . . . [O]ne barrel exploded when [the worker] began cutting it open, and the explosion reportedly rocked the surrounding area. [The worker] died before emergency personnel arrived." 81 F. SupP.3d at 1260.[5] The barrel, prior to entering the secondhand barrel market, had contained a chemical sold as an automobile paint thinner/automobile painting equipment cleaner. The representative of the estate of the deceased worker brought suit against the manufacturer of this product.

¶13 As in the present case, the manufacturer included a warning label on the barrel; however, the manufacturer made no effort to ensure that any businesses purchasing the product subsequently sold "the used barrels to a barrel refurbisher." Id. at 1261. Applying Oklahoma law, the Thompson Court stated as follows:

Plaintiff contends that the meaning of "ordinary consumer" extends beyond "users who a manufacturer specifically targets" and should include those, like [the deceased worker], who acquire barrels that at one point contained [the paint thinner]. The Oklahoma Supreme Court has defined the "ordinary consumer" as "one who would be foreseeably expected to purchase the product involved." Woods v. Fruehauf Trailer Corp., 765 P.2d 770, 774 (Okla. 1988). In Woods, the Oklahoma Supreme Court determined that the ordinary consumer of a tanker trailer designed to haul gasoline was "one who is familiar with the hazards associated with loading, transporting and unloading gasoline." Id. The Tenth Circuit, applying Oklahoma law, determined that the wife of a man who worked with a product containing asbestos was not an ordinary consumer of the product because she was not a "foreseeable purchaser or user"; her only contact with the product came through laundering her husband's clothes. Rohrbaugh v. Owens-Corning Fiberglas Corp., 965 F.2d 844, 846-47 (10th Cir. 1992) (Rohrbaugh I). Finally, the Oklahoma Court of Civil Appeals recently concluded that individuals who purchased a product made of repackaged raw chemicals were not ordinary consumers of the chemicals because the manufacturer sold "technical grade" chemicals not intended for use by the public and would sell only to industrial users. Swift, 310 P.3d at 1132.

81 F. SupP.3d at 1263.

¶14 The Thompson Court then convincingly reasoned as follows:

Even were the Court to broaden the meaning of "ordinary consumer" beyond [an automobile paint or body shop technician], it would not encompass [the deceased worker]. Fundamentally, [the deceased worker] was intent on acquiring the used barrel so that he could transform it for his own purposes; the contents of the barrel were irrelevant. As in Rohrbaugh I, there is no evidence that [the deceased worker] ever intended to or would purchase [the product in question]. He thus cannot be considered "one who would be foreseeably expected to purchase the product involved," Woods, 765 P.2d at 774; to so find would expand the meaning of "foreseeable" beyond the bounds of Oklahoma law. The Court finds that the ordinary consumer of [the product in question] is the automobile paint and body shop technician, as that is the person who would foreseeably purchase and use [the product].

81 F. SupP.3d at 1264.

¶15 We similarly conclude the ordinary consumer of the product sold by Brainerd is the industrial purchaser of toluene. Moreover, even were we to broaden the meaning of "ordinary consumer" beyond such a purchaser, it would still not encompass B.L.M. or his employer. We further conclude Brainerd's failure to warn regarding the dangers of empty drums containing residual amounts of toluene did not render its product unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer. Pursuant to Thompson, as well as to Woods and Swift, we conclude, as a matter of law, that Brainerd cannot be held liable under the strict products liability theory advanced by Plaintiff.

II. Negligence

¶16 In order to support an actionable claim under a negligence theory,

it is necessary for a plaintiff to establish the concurrent existence of: 1) a duty on the part of the defendant to protect the plaintiff from injury; 2) the failure of the defendant to perform that duty; and 3) injury to the plaintiff resulting from such failure.

Woods, ¶ 19 (footnote omitted). As in the present case, in Swift the plaintiffs asserted a theory of ordinary negligence against the manufacturer of the chemicals in question "for negligent failure to warn of use of the chemicals." Swift, 2013 OK CIV APP 88, ¶ 24. As set forth above, and similar to Plaintiff's articulation of its products liability theory, Plaintiff asserts that Brainerd was "in a position to need to warn" B.L.M. and/or his employer regarding the dangers of residual toluene, and breached its duty to B.L.M. and/or his employer "by failing to do so."

¶17 In this regard, the Swift Court explained:

Under a negligence theory of recovery, a seller or supplier of a product has a duty to use reasonable care to provide adequate warnings or instructions to avoid injury to a foreseeable plaintiff. An essential element to recovery is that the defendant owed the plaintiff a duty of care under the circumstances presented. "Just because the defendant has created a risk which harmed the plaintiff . . . does not mean that, in the absence of some duty to the plaintiff, the defendant will be held liable." Nicholson v. Tacker, 1973 OK 75, ¶ 11, 512 P.2d 156, 158. Whether a duty of care exists in a particular case is a question of law for the court to determine. Prince v. B.F. Ascher Co., 2004 OK CIV APP 39, 90 P.3d 1020.

Swift, ¶ 24.

¶18 In reaching its conclusion that the manufacturer of the chemical did not owe a duty to the injured party, the Swift Court was guided by the Oklahoma Supreme Court's analysis in Duane v. Oklahoma Gas & Electric Co., 1992 OK 97, 833 P.2d 284. The Duane Court explained "there is no duty to warn where the product is used in an unlikely, unexpected or unforeseeable manner." Id. ¶ 4. In Duane, the plaintiff "sued, among others, Shell and Chevron, for strict liability and negligence, arguing that Shell and Chevron were liable to him for their failure to warn of the dangerous propensities of their insulating oil." Id. ¶ 2 (footnote omitted). The plaintiff in Duane was employed by a company that designed "oil-filled switches," and one of these switches had been placed inside a tank which, after being shipped to a customer, "had exploded internally." Id. ¶ 1. It was surmised that the switch itself had failed, and the tank was therefore shipped back to the plaintiff's employer.

In order to discover the cause of the switch's failure, [the plaintiff's employer] instructed his employees to drain the switch of the oil remaining inside before cutting open the tank, as they had done many times in the past. This time, however, [the plaintiff's employer] additionally instructed [the plaintiff] to purge the switch with compressed air before grinding it open to inspect the inside. [The plaintiff] was injured when he began grinding and the tank exploded.

Id. ¶ 2.

¶19 As indicated, the plaintiff in Duane sued the suppliers of the insulating oil, alleging that this oil caused the explosion which resulted in the plaintiff's injuries. However, regarding the duty to warn of dangerous characteristics, the Court explained as follows:

The general rule as to a supplier's duty to warn of known dangers in the ordinary use of its product is set out in Restatement of Torts (Second), § 388:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

We find that neither (a) nor (b) above is present in the case at bar. The use for which the chattel in this case was supplied was for insulating oil to be used in oil-filled vacuum switches designed and manufactured by [plaintiff's employer]. The oil was not inherently dangerous for the use for which it was supplied: as insulating oil. Plaintiffs' own allegations are that the oil became dangerous when a variety of conditions occurred, such as severe electrical arcing, purging the switch with air, and grinding.

Duane, ¶¶ 5-6.

¶20 It is undisputed that B.L.M. and his employer were not using Brainerd's product "for the use for which it was supplied." Indeed, at the time of the accident, Brainerd's product was neither being used "in the manner for which" it was supplied, nor "by a person for whose use it [was] supplied." Therefore, we conclude there was no duty to warn B.L.M. or his employer in the manner advanced by Plaintiff. Finding no duty, we conclude Brainerd cannot be held liable under the ordinary negligence theory advanced by Plaintiff.

CONCLUSION

¶21 We conclude Brainerd cannot be held liable under either the products liability theory or ordinary negligence theory advanced by Plaintiff. Therefore, we affirm the trial court's award of summary judgment in favor of Brainerd.

¶22 AFFIRMED.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] In the deposition of a corporate representative of Brainerd, the representative testified that "[t]he majority of a paint thinner is toluene." He testified that is why it is sold to entities like "Anchor Paint."

[2] See n.4, infra.

[3] In Oklahoma, "the seller of a product in a defective condition, which is unreasonably dangerous to the user or consumer, is strictly liable for the physical harm to the person or property caused by the defect. This theory of recovery is based on the Restatement (Second) of Torts, § 402A (1965)." Allenberg, ¶ 11 (footnote omitted).

[4] In Plaintiff's supplemental response to Brainerd's motion for summary judgment, Plaintiff attached an affidavit of her attorney wherein he states that, based on the "recent testimony of Defendants Marquez" -- i.e., the employers of B.L.M. and the owners of Psycho Path, LLC -- "[i]t is unknown when and from whom the barrel in question was purchased. The chain of custody of the barrel could have been with Defendant Thomas, Defendant West Texas Drum Company, or Defendant Brainerd. From the deposition of Mr. Marquez, it appears that more likely than not, the barrel was in the possession of one [of] these three (3) Defendants," and "it is impossible to determine which Defendant had custody of the barrel" immediately before it came into the possession of the Marquezes. However, it appears that any lack of evidence in this regard -- in particular, lack of evidence as to whether Brainerd sold the empty drum directly to Psycho Path, LLC -- is the result of the fact that this issue was never in dispute. That is, as set forth above, it was Plaintiff's position (at least until the filing of its supplemental response) that the drum was "resold" -- i.e., that it was foreseeable to Brainerd that its drums full of toluene might be subsequently resold -- but at no point did Plaintiff allege that Brainerd was in the business of selling empty tanks or that it sold the tank to Psycho Path, LLC.

More importantly, evidentiary materials have been presented in support of the conclusion that Brainerd was in the business of selling toluene, not emptied secondhand barrels, and that the owners of Psycho Path, LLC purchased a barrel on the secondhand market from Third-Party Defendant Robert Thomas, an individual not affiliated with Brainerd, who testified to selling one-hundred secondhand barrels to Psycho Path, LLC just prior to the accident. See, e.g., R. Tab 4, Brainerd's Exhibit 2 (stating, inter alia, "Product identifier [--] Toluene," "Distributed by: brainerd," "intended for use as a refinery feedstock, fuel or for use in engineered processes"); R. Tab 4, Brainerd's Exhibit 3; R. Tab 4, Brainerd's Exhibit 6 ("Through discovery, the parties have learned that [Mr. Thomas] actually supplied the used barrel that is the subject matter of this litigation . . . ."); R. Tab 6, Plaintiff's Exhibit 2 (deposition of Mr. Thomas wherein the following statements are found: "Mr. Victor Marquez, this individual who purchased the barrels"; "your testimony is that you sold Psycho Path two different orders of 50 barrels each? A. Yes, sir."; the sale occurred "[a]bout a week or two before Halloween."). Therefore, even if Mr. Marquez stated in his deposition that he does not know "when and from whom the barrel in question was purchased," this does not support a reasonable, non-speculative, and countervailing inference that Brainerd sold the empty tank to Psycho Path, LLC.

Thus, we agree with Brainerd's assertions in its response in opposition to Plaintiff's supplemental response, wherein it states that no testimony of Mr. Marquez "change[s] the facts as they had previously been identified." Brainerd asserts, "Nothing in the testimony of Mr. Marquez indicates that the barrel came from anywhere but Mr. Thomas." Brainerd asserts this is "a fact known since July 2016, when Mr. Thomas gave his deposition and admitted that he had sold a large number of barrels to Mr. Marquez" prior to the accident. Brainerd further asserts Plaintiff has "presented no evidence that the barrel in question came from anywhere other than Mr. Thomas."

Once a defendant has introduced evidentiary materials showing no substantial controversy as to one fact material to plaintiff's cause of action and this fact is in defendant's favor, the burden shifts to the plaintiff to show that evidence is available which would justify a trial of the issue. If such evidence is not presented, summary judgment should, if appropriate, be entered against the non-moving party.

Swift, 2013 OK CIV APP 88, ¶ 28 (internal quotation marks omitted) (citation omitted). We conclude Mr. Marquez's asserted lack of knowledge as to the provenance of the particular barrel in question fails to create a substantial dispute of material fact in this regard.

[5] Notably, evidentiary materials were presented that "secondhand barrels 'have a thousand and one uses on the rural America farm.'" Id.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2004 OK CIV APP 39, 90 P.3d 1020, PRINCE v. B.F. ASCHER COMPANY, INC.
Discussed
 2013 OK CIV APP 88, 310 P.3d 1127, SWIFT v. SERVICE CHEMICAL, INC.
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 105, 765 P.2d 770, 59 OBJ 2541, Woods v. Fruehauf Trailer Corp.
Discussed at Length
 1992 OK 97, 833 P.2d 284, 63 OBJ 2021, Duane v. Oklahoma Gas & Elec. Co.
Discussed
 2001 OK 22, 22 P.3d 223, 72 OBJ 815, ALLENBERG v. BENTLEY HEDGES TRAVEL SERV. INC
Discussed
 1973 OK 75, 512 P.2d 156, NICHOLSON v. TACKER
Discussed
 1974 OK 52, 521 P.2d 1353, KIRKLAND v. GENERAL MOTORS CORPORATION
Discussed
 2012 OK 80, 286 P.3d 643, HARMON v. CRADDUCK
Discussed
 2014 OK 68, 336 P.3d 457, WOOD v. MERCEDES-BENZ OF OKLAHOMA CITY
Discussed
 1982 OK 71, 648 P.2d 21, McKee v. Moore
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 994, Procedure When There is More Than One Claim or Party - Final Judgment
Cited


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA